UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JACKSON PICHARDO,

                               Case No. 20-cv-4706

             Plaintiff,

      v.

UNITED CHELSEA, LLC, UNITED           **COMPLAINT**
VILLAGE, LLC, LANDMARK RESOURCES
LLC and MARK HAROUNIAN,

             Defendants.
-------------------------------------------------------------X

Plaintiff JACKSON PICHARCO ("Pichardo" or "Plaintiff"), by his attorneys, RAPAPORT LAW FIRM, PLLC, as and for his Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action to seek unpaid wages, including unpaid overtime compensation and interest thereon, reimbursement for unlawful deductions, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

2. This action further invokes the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (e.g., New York Wage Payment Act; NY Labor Law §§ 191, 193, 195, and 12 N.Y.C.R.R. Part 141-1.9, 2.10, Part 142), and NY Labor Law § 215).

3. At all relevant times, Defendants UNITED CHELSEA, LLC ("United Chelsea"), UNITED VILLAGE, LLC ("United Village"), LANDMARK RESCOUCES LLC ("Landmark"), and MARK HAROUNIAN ("Harounian") (collectively, "Defendants")

operated as a unified and centrally-controlled real estate enterprise that, upon information and belief, owns, controls and operates at least 25 buildings in New York City.

4.     Upon information and belief, Harounian, together with members of his family, own at least sixteen limited liability companies (which Harounian has referred to as the "Family LLCs") that exist for the purpose of owning real estate in Manhattan.  During the course of a long-running state court legal proceeding between Harounian and members of his family, Harounian submitted an affidavit in which he stated, "I am the sole manager and a member of each of the Family LLCs."

5.     At all relevant times, Defendants operated as a unified enterprise that functioned under the direction and control of Harounian, who has held himself out as the "sole manager" of each of the limited liability companies that he uses to serve as title-holders of the respective properties.  Although Defendants' buildings are titled in the names of various limited liability companies, they are all under the ultimate control of Harounian, who is a member of and/or holds the most senior position in these title-holding entities.

6.     At all relevant times, Defendants required Plaintiff to work in excess of forty (40) hours per week without paying him overtime compensation as required by the FLSA and NYLL.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction of this action pursuant to the provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., including under 29 U.S.C. §§ 207, 216, and 217. This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331) and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367.

8. Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process. Defendants operate facilities and employed Plaintiff in this judicial district.

9. This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

## THE PARTIES

**Plaintiff:**

10. Plaintiff is an adult, natural person who resides in Bronx County, New York.

11. Beginning in or about 2006 to on or about April 13, 2020, Plaintiff performed maintenance work for Defendants at approximately six apartment buildings located in the Chelsea and Greenwich Village neighborhoods of Manhattan, which collectively have approximately 78 residential apartment units.

**Defendants:**

12. Upon information and belief, Defendants operate as a unified enterprise for a common business purpose, to wit: directly and/or indirectly owning, managing and controlling approximately 25 buildings that are titled in the name of title-holding companies controlled by Harounian.

13. Harounian is an individual engaging in (or who was engaged in) business in this judicial district during the relevant time period. Harounian is sued in his capacity as owner, officer and/or agent of the corporate defendants. Harounian possesses operational

control over the corporate defendants and an ownership interest in corporate defendants. He has the authority to hire and fire employees, and he controlled the terms and conditions of Plaintiff's employment with Defendants.

14. Upon information and belief, Harounian resides in Nassau County, New York.

15. The Defendants operate from a central office located 224 Fifth Avenue, New York, New York 10001, where Harounian oversees operations.

16. The Defendants share the same telephone number (to wit: (212) 686-2002), as well as the same managers and employees, who perform work interchangeably at Defendants' various buildings. For example, as detailed below, Plaintiff performed work at six different apartment buildings that are titled in the names of several different title-holding entities that are exclusively managed and operated by Harounian.

17. Upon information and belief, and at all times herein relevant, United Chelsea is a New York corporation doing business in New York. United Chelsea holds title to Defendants' building located at 264 West 19th Street, New York, New York (the "19th Street Building"), where Plaintiff regularly performed maintenance and repair work.

18. In Defendants' filings with the New York City Department of Housing Preservation and Development, Defendants designated United Chelsea as the managing agent of the 19th Street Building, and they identified Harounian as United Chelsea's officer.

19. Upon information and belief, United Village is a New York corporation doing business in New York County, New York, with a principal place of business at 224 Fifth Avenue, New York, New York.

20. Upon information and belief, pursuant to United Village's Second Amended and Restated Operating Agreement, dated November 1, 2012, at all relevant times, Harounian was the "sole manager" of United Village, and, accordingly, he was exclusively vested with sole authority for the "management, control and operation" of United Village.

21. At all relevant times, United Village was the title owner of the adjoining apartment buildings located at 53, 55, and 57 Barrow Street, as well as 19-23 Commerce Street, New York, New York. Plaintiff regularly performed maintenance and repair work at each of these buildings.

22. At all relevant times, Harounian was the senior manager and highest-ranking officer of United Village.

23. Upon information and belief, Landmark Resources is a New York corporation with an address for conducting business at 224 Fifth Avenue, New York, New York.

24. Upon information and belief, Landmark Resources was formed and controlled by Harounian and it functioned as a management company by which Defendants communicated with tenants of their various buildings.

25. Harounian and Defendants' management personnel utilized the letterhead and email addresses of Landmark Resources to communicate with Plaintiff, as well as to communicate with tenants.

26. Defendants are an integrated enterprise, with common management, control, personnel policies, ownership, and inextricably intertwined operations and functioning.

## FACTUAL ALLEGATIONS

27. As described herein, Defendants have, for years, knowingly engaged in unlawful business practices by requiring Plaintiff to work numerous hours of overtime on a daily and/or weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; paying flat weekly sums that resulted in effective hourly rates that fell below New York minimum wage; illegally deducting sums from paychecks; and failing to provide wage notices and wage statements required by NYLL.

28. Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

29. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

30. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the NYLL, §§ 2 and 651.

31. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00.

32. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

33. Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions.

34. Defendants jointly employed Plaintiff and are Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

35. In the alternative, Defendants constitute a single employer of Plaintiff.

36. Upon information and belief, Harounian operates the corporate defendants as either alter egos of himself and/or fails to operate the corporate defendants as legally separate entities apart from himself.  Upon information and belief, among other things, the assets and revenues of the corporate defendants are intermingled, including, inter alia, use of one corporation's revenues to pay for workers and/or repairs at buildings owned by other corporate defendants.  Harounian operates the buildings and the corporate defendants for his own benefit, without adhering to corporate form.

37. Harounian's self-serving misconduct in his management of the financial affairs of the corporate defendants was so pervasive and egregious that it led to long-running (and ongoing) state court proceedings against Harounian by his family members for using the business to divert the enterprise's funds to enrich himself and to fund an extravagantly lavish lifestyle.

38. Upon information and belief, based on a review of the documents filed by Harounian's immediate family members in the New York County Supreme Court, during the same period of time when Harounian exploited Plaintiff by demanding that Plaintiff toil at the buildings upwards of 70 hours per week without any overtime compensation, Harounian used the corporate defendants' funds to finance his lavish lifestyle.

39. At all times relevant to this proceeding, Harounian personally gave instructions to Plaintiff, either directly (for example, through emails) or through Harounian's assistant/secretary.

**Factual Allegations Relating to Wage Claims:**

40. Plaintiff began working for Defendants in approximately 2006.

41. During Plaintiff's employment through in or about 2017, Defendants issued weekly checks to Plaintiff of $359.62; in or about late 2017, these weekly net payments were increased to approximately $394.00 per week and subsequently to approximately $483.00 per week. These weekly checks: (a) were not accompanied by paystubs or, for that matter, any itemization of weekly withholdings; and (b) covered only the first forty hours of work per week.

42. In 2018, Defendants represented to Plaintiff that his weekly "gross salary" was $511.00, albeit Defendants still did not provide Plaintiff with any itemization of withholdings with his paychecks.

43. On or about January 30, 2020, Defendants represented to Plaintiff that his "weekly gross salary" was $638.00, but their paychecks to him were not accompanied by paystubs that would have shed light on deductions and how Plaintiff's net paychecks were calculated.

44. During extended periods of his employment, Plaintiff's rate of pay per week was below the New York City minimum wage rate applicable to large employers (for example, $13.00 per hour in 2018) that Defendants were required to pay to Plaintiff.

45. Plaintiff's duties at all six buildings where he worked involved virtually all aspects of maintenance, including removal of trash and recyclables, apartment renovations and turnovers, painting, light electrical work, roof maintenance/repair, interacting with contractors and tenants, accepting deliveries of materials, addressing leaks, shoveling snow, cleaning surface areas, and being on-call at all hours.

46. Tenants communicated with Plaintiff at all hours of the day and night.

47. Plaintiff regularly worked 64 or more hours per week, as follows: Monday through Friday from approximately 6:00 a.m. to 5:00 p.m.; Saturday: 5:00 a.m. to 12:00 p.m.; Sunday: two hours; with no designated/uninterrupted lunch breaks.

48. But in actuality, Plaintiff was required to be on-call and handle tenant requests at all hours, which entailed work hours that were far in excess of his foregoing regular schedule. In addition, Plaintiff often began his workdays as early as approximately 5:00 a.m.

49. During prolonged periods of time, Plaintiff's regular work schedule entailed working weekdays until 7:00 p.m. Solely by way of example, during a one-month period in 2017, Plaintiff began his workdays at 5:30 a.m. and worked until 6:30 p.m. to 7:00 p.m. due to major repairs to the gas system at 264 West 19th Street, a 30-unit apartment building that he was responsible for maintaining. During this period of time, Plaintiff's work schedule

entailed more than 70 hours of work per week. Yet Defendants continued to pay him no compensation for the hours that Plaintiff worked above the first 40 hours per week.

50. The foregoing are conservative estimates of Plaintiff's schedule and wage underpayments, particularly because Plaintiff was on-call, and he was regularly called upon to perform work after hours.

51. On occasion, because of the workload that Defendants required of Plaintiff and/or intensive projects, Plaintiff incurred out-of-pocket costs to pay to workers whom he paid, with Defendants' knowledge and acquiescence, to assist with his work. Plaintiff was also required to use his personal funds to pay for people to fill in for him when he went on vacation. The foregoing amounted to wage theft on the part of Defendants.

### AS AND FOR A FIRST CAUSE OF ACTION
### FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*

52. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

53. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d). Defendants employed Plaintiff as a maintenance worker, employment positions which engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1). At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

54. In the performance of his duties for Defendants, Plaintiff worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services he provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

55. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

56. As a result of the foregoing, Plaintiff seeks judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiff for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
### Violation of the New York Minimum Wage Act

57. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

58. The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

59. Defendants, in violation of the NYLL, willfully paid Plaintiff less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

60. By way of example, on or about August 24, 2018, Defendants represented to Plaintiff that his "gross" weekly salary was $511.00 (Plaintiff did not receive itemized statements itemizing the deductions from his gross pay each week). Based on the foregoing, Plaintiff's effective hourly rate of pay was $12.77 ($511 ÷ 40), which was below the applicable New York City minimum wage rate of $13.00.

61. Plaintiff was damaged in amounts to be determined at trial.

62. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### AS AND FOR A THIRD CAUSE OF ACTION
### New York Labor Law – Overtime Wages

63. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

64. The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

65. Defendants willfully failed to pay Plaintiff for all of the hours that he worked in excess of 40 hours in a workweek.

66. Defendants willfully failed to pay Plaintiff overtime at a rate of time and one-half his effective, regular hourly rate for hours worked in excess of 40 hours per workweek.

67. Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

68. As a result of Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per workweek, Plaintiff is entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A FOURTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**

69. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

70. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

71. Defendants willfully failed to provide Plaintiff with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and

such other information as required by NYLL § 195(3).   In fact, Plaintiff was provided with no weekly pay statements whatsoever.

72.     Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

### AS AND FOR A FIFTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices**

73.     Plaintiff incorporates by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

74.     The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

75.     From its enactment on April 9, 2011 through January 5, 2016, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (amended in January 2015 to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other mandated disclosure.

76.     In violation of NYLL § 191, Defendants willfully failed to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to their rate of pay, with wage notices required by NYLL § 191.

77.     Due to Defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages: (a) for the time period commencing six years

before the filing of this Complaint, through January 5, 2015, the sum $50 per work week, up to $2,500; and (b) from January 6, 2015 through the resolution of this case, $50.00 per work day, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff, Jackson Pichardo, respectfully requests that the Court grant the following relief:

1. Declaring, adjudging and decreeing that Defendants violated the minimum wage and overtime provisions of the FLSA and NYLL as to Plaintiff;

2. Awarding Plaintiff damages and restitution for unpaid compensation, unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial, as well as liquidated damages;

3. Awarding statutory damages for Defendants' failure to provide Plaintiff with statements and information required by NYLL § 198(1-b) and (1-d) and NYLL § 195(3);

4. Awarding statutory damages for Defendants' violation of NYLL § 191 by failing to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to his rate of pay, with wage notices required by NYLL § 191;

5. Declaring that Defendants' violations of the NYLL were willful;

6. For all other Orders, findings and determinations identified and sought in this Complaint;

7. For prejudgment and post judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

8. For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

9. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
June 18, 2020

**RAPAPORT LAW FIRM, PLLC**

By: _____s/_____

Marc A. Rapaport, Esq.
*Attorney for Plaintiff*
Rapaport Law Firm, PLLC
One Penn Plaza, Suite 2430
New York, New York 10119
Ph: (212) 382-1600
mrapaport@rapaportlaw.com